FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
NOV 04 2025
TAMMY H. DAVIS, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:25-CR-00208 LPR |
| | ) | |
| KRAMEELAH BANKS | ) | 18 U.S.C. § 1001(a)(2) |
| | ) | 18 U.S.C. § 1028A(a)(1) |
| | ) | 18 U.S.C. § 1035(a)(2) |
| | ) | 18 U.S.C. § 1343 |

INDICTMENT

THE GRAND JURY CHARGES:

COUNTS ONE THROUGH TWENTY-THREE

Wire Fraud

At all times relevant to this Indictment:

*General Allegations and Introduction*

1. Medicare was a federal program that provided health care benefits to people who were over the age of 65 or disabled. The Centers for Medicare & Medicaid Services administered the program and used contractors to process and pay bills to Medicare. Novitas Solutions Inc. was the contractor responsible for processing and paying bills submitted to Medicare in Arkansas. Qlarant was the Unified Program Integrity Contractor (UPIC) for Arkansas, which made it responsible for conducting investigations and audits designed to protected Medicare from fraud, waste, and abuse.

2. USAble Mutual Insurance Company d.b.a. Arkansas Blue Cross and Blue Shield and d.b.a. BlueAdvantage Administrators of Arkansas and its associated company HMO Partners, Inc. d.b.a. Health Advantage (collectively "BCBS") provided health insurance for persons around Arkansas. For some insureds, BCBS was the sole insurer. For others, BCBS was a secondary or supplemental insurer, meaning BCBS paid for expenses not covered by one's primary insurer (*e.g.*, Medicare).

3. Medicare and BCBS both qualified as "health care benefit program[s]" as defined under Title 18, United States Code, Section 24(b).

4. Medicare and BCBS processed and paid bills for medical services in good faith reliance on the fact that services had actually been rendered. Had they known that services were not rendered, they would have refused payment.

5. Defendant KRAMEELAH BANKS was a psychologist who owned and operated Arkansas Behavioral Center (ABC), a psychology clinic located in Little Rock, Arkansas.

6. BANKS saw patients on various insurance plans at ABC, including Medicare and BCBS.

7. Some patients were regulars. Most were one-off referrals.

8. Regulars received ongoing psychotherapy.

9. Referrals were seen one time for the sole purpose of receiving pre-surgical psychological evaluations before undergoing certain procedures, such as implantation of devices used in treating chronic pain (*e.g.*, pain pumps or nerve stimulators).

10. Healthcare providers like BANKS used Current Procedural Terminology (CPT) Codes to bill insurers for their services. Most of BANKS's bills to Medicare and BCBS were for CPT 90837, which covered 60-minute psychotherapy sessions.

11. From in or around 2021 and continuing into 2023, BANKS billed Medicare and BCBS for thousands of hours of psychotherapy that never took place.

12. BANKS used an online program called Office Ally to schedule patient appointments on her calendar and to bill insurers (including Medicare and BCBS) for her psychotherapy services. Office Ally's servers were located outside Arkansas, such that whenever BANKS modified her online calendar or submitted a bill via Office Ally, those actions passed through out-of-state servers.

13. When BANKS submitted legitimate bills for psychotherapy that she had actually provided, she usually did so by billing after each individual session at or near the time of service.

14. By contrast, when she submitted fraudulent bills for psychotherapy that never took place, she usually did so by submitting a single bill late in the year that covered multiple phony sessions.

15. Fraudulent billing was rampant. BANKS billed for referral patients seen just once as if they had received regular psychotherapy for months at a time. She billed for psychotherapy rendered while vacationing out of state. She billed for over 24 hours of psychotherapy rendered in one day. BANKS even billed for psychotherapy rendered to patients who were dead.

*Vacation Billing*

16. BANKS travelled to Florida in or around September 2021. While there she posted pictures of herself at the beach on Facebook (*pictured below*) with a caption that read "[e]njoying family time in Florida." Following her return, BANKS billed Medicare and BCBS over $2,000 for numerous hours of psychotherapy rendered while she was vacationing in Florida, including one session with patient J.G.



17. BANKS travelled to Mexico in or around late July 2022 and early August 2022. While there she posted a picture of herself poolside on Facebook (*pictured below*) with a caption that read "[c]ontinuing my celebration of my 45th b-day…just hanging out by the pool in Mexico." Following her return, BANKS billed Medicare and BCBS more than $15,000 for over 50 hours of psychotherapy rendered while she was vacationing in Mexico, including sessions with patients D.Hi., R.B., and R.R.



18. BANKS travelled to Arizona in or around September 2022. Following her return, BANKS billed Medicare and BCBS more than $23,000 for over 90 hours of psychotherapy rendered while she was vacationing in Arizona, including one session with patient J.C.

*Impossible Days*

19. BANKS repeatedly billed insurers for more than 24 hours of psychotherapy rendered on a single day.

20. All told, between January 2021 and December 2023, BANKS billed insurers for over 24 hours of psychotherapy more than 45 times. Nearly half of these impossible days (upwards of 20) involved BANKS billing for over 30 hours of psychotherapy. And more than 5 of these impossible days involved BANKS billing for over 40 hours of psychotherapy rendered in a single day.

*Deceased Patients*

21. Equally impossible, BANKS also billed insurers for psychotherapy supposedly rendered to patients months or years after they had died. For example:

    a. T.H. died in March 2020. BANKS thereafter billed Medicare for over 30 sessions with T.H. spanning from January 2021 to January 2023.

    a. G.F. died in October 2021. BANKS thereafter billed Medicare for over 30 sessions with G.F. spanning from October 2021 to January 2023.

    b. N.F. died in December 2021. BANKS thereafter billed Medicare for over 20 sessions with N.F. spanning from December 2021 to January 2023.

    c. T.T. died in January 2022. BANKS thereafter billed Medicare for over 20 sessions with T.T. spanning from February 2022 to January 2023.

    d. R.W. died in February 2022. BANKS thereafter billed Medicare for over 15 sessions with R.W. spanning from February 2022 to January 2023.

    e. C.B. died in February 2022. BANKS thereafter billed Medicare for over 20 sessions with C.B. spanning from February 2022 to January 2023.

*BANKS Falsifies Treatment Records to Conceal Wrongdoing*

22. When patients complained after seeing bills for psychotherapy visits that never took place, Medicare and BCBS asked BANKS to provide copies of her supporting treatment records.

23. BANKS responded to such requests by creating phony, backdated records that made it look like the patients had actually received the psychotherapy for which she billed. Records also often included fictitious accounts of trauma or stress that showed a need for ongoing psychotherapy.

24. BANKS even recycled her phony records. For example, the records BANKS provided to Medicare for J.C. (*below at left*) and to BCBS for B.W. (*below at right*) both asserted: "[Patient] *has gone through 2 divorces and has had a very stressful recent relationship.* [Patient] *explained that her first husband left the home on one July 4th and just never returned.*"

**DIAGNOSTIC EVALUATION**

Name: ▓
Examination Date: 01/19/2022

Reason for Referral and Background Information:

▓ was referred for a psychological evaluation by herself, her primary care physician (PCP) to aid in differential diagnosis, treatment planning and to assess her current level of psychological, behavioral and emotional functioning. ▓ presents with previous clinical diagnoses that include: Anxiety Disorder and Depressive Disorder. ▓ was prescribed a psychotropic medication regimen to assist with her behavioral difficulties; however, her PCP questions if her medications have been effective for addressing all of her notable symptomology.

▓ reports a history of harsh discipline from her father and very strict religious practices as a child. ▓ further reports a significant amount of life stressors throughout her adulthood life. ▓ reported that she has gone through 2 divorces and has had a very stressful recent relationship. ▓ explained that her first husband left the home on one 4th of July and just never returned. ▓ reported that she was uncertain what caused him to leave the home and questions what happened. ▓ further reported current life stressors that exacerbate her symptomology. ▓ reports that she has recently had episodes of crying every day and her inability to concentrate has been worse. ▓ reported she feels like she is "working in circles and not getting anything done." ▓ reported that she noticed that her concentration difficulties increased significantly approximately 2 weeks ago when her pain worsened. Per report, ▓ realized that her anxiety increased because of her pain.

**DIAGNOSTIC EVALUATION**

Name: ▓
Date of Birth: ▓
Age: 75 years, 10 months
Examination Date: 02/07/2022

Reason for Referral and Background Information:

▓ was referred for a psychological evaluation by herself, her primary care physician (PCP) to aid in differential diagnosis, treatment planning and to assess her current level of psychological, behavioral and emotional functioning. ▓ presents with previous clinical diagnoses that include: Anxiety Disorder and Depressive Disorder. ▓ was prescribed a psychotropic medication regimen to assist with her behavioral difficulties; however, her PCP questions if her medications have been effective for addressing all of her notable symptomology.

▓ reports a history of harsh discipline from her father and very strict religious practices as a child. ▓ further reports a significant amount of life stressors throughout her adulthood life. ▓ reported that she has gone through 2 divorces and has had a very stressful recent relationship. ▓ explained that her first husband left the home on one 4th of July and just never returned. ▓ reported that she was uncertain what caused him to leave the home and questions what happened. ▓ further reported current life stressors that exacerbate her symptomology. ▓ reports that she has recently had episodes of crying every day and her inability to concentrate has been worse. ▓ reported she feels like she is "working in circles and not getting anything done." ▓ reported that she noticed that her concentration difficulties increased significantly approximately 2 weeks ago when her pain worsened. Per report, ▓ realized that her anxiety increased because of her pain.

*BANKS Lies to FBI to Conceal Wrongdoing*

25. The FBI interviewed BANKS at her Little Rock home on or about January 31, 2024.

26. In pertinent part, BANKS acknowledged she used Office Ally to schedule appointments and bill insurers but blamed any overbilling on mistaken calendar entries.

27. BANKS claimed she relied on her Office Ally calendar to bill in that she submitted claims for whatever appointments happened to appear on her calendar.

28. BANKS explained any overbilling would have resulted from one-time referral patients being mistakenly entered into her Office Ally scheduling system as if they were regular patients such that recurring appointments showed up on her calendar.

29. Office Ally data showed what BANKS told the FBI to be false. Time and again, BANKS submitted bills to Medicare and Blue Cross for extended periods of psychotherapy supposedly rendered to patients for which there were no corresponding calendar entries on Office Ally.

*Representative Patients*

30. Former patients B.P., B.L., D.K., L.H. J.G., D.Ha., D.Hi., J.C., R.B., B.W., R.R., L.H., P.M., L.B., R.H., N.J., D.B., and N.M. each visited BANKS for one-off evaluations that were generally pre-surgical in nature.

31. Days, months, and sometimes years after their legitimate one-off visits, BANKS proceeded to bill their insurers for *hundreds* of additional visits that never took place. For example, following a legitimate visit with B.L. in or around April 2021, BANKS proceeded to bill B.L.'s insurance for upwards of 50 additional visits spanning 2021, 2022, and 2023.

32. Overbilling was not limited to these patients. Over the course of the scheme, BANKS billed Medicare and BCBS for *thousands* of hours of psychotherapy that never took place causing Medicare and BCBS to lose upwards of $500,000.

## The Charge

33. From in or around January 2021 to in or around December 2023, both dates being approximate and inclusive, in the Eastern District of Arkansas, Defendant KRAMEELAH BANKS, with the intent to defraud, voluntarily and intentionally devised, and intended to devise, a scheme and artifice to defraud Medicare and BCBS, and to obtain money and property from Medicare and BCBS by means of materially false and fraudulent pretenses, representations, and promises and by concealment of material facts.

34. It was the purpose of the scheme for BANKS to unlawfully enrich herself through billing Medicare and BCBS for psychotherapy services that never took place.

35. The manner and means by which BANKS carried out the scheme included, among others, the following:

   a. BANKS offered psychotherapy services including repeated psychotherapy to regular patients and diagnostic evaluations to one-off referral patients.

   b. BANKS used Office Ally to schedule appointments to her online calendar and bill insurers like Medicare and BCBS.

   c. In addition to billing for psychotherapy services she actually provided, BANKS also billed for psychotherapy services that never took place.

   d. BANKS responded to billing inquiries from Medicare and BCBS by creating phony, backdated records featuring patient names and personally identifying information that reflected psychotherapy services had been rendered on the dates in question when, in truth, they had not.

36. Had Medicare and BCBS known psychotherapy services had not actually been rendered, they would not have authorized payment on the claims.

37. On or about the dates listed below, in the Eastern District of Arkansas and elsewhere, Defendant, KRAMEELAH BANKS, for the purpose of executing and attempting to execute the scheme and artifice to defraud Medicare and BCBS and to obtain money from Medicare and BCBS by means of materially false and fraudulent pretenses, representations, and promises and by concealment of material facts, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, to wit, BANKS submitted and caused to be submitted electronic bills for psychotherapy services that did not occur via Office Ally, which travelled from the Eastern District of Arkansas through out-of-state servers, in connection with the patients and dates of service listed below:

| Ct. | Appx. Date | Description |
|---|---|---|
| 1 | October 7, 2021 | Bill for $2,750 in psychotherapy services rendered to patient B.P. from January 2021 through May 2021, including visit on February 1, 2021. |
| 2 | October 9, 2021 | Bill for $5,000 in psychotherapy services rendered to patient B.L. from January 2021 through September 2021, including visit on February 2, 2021. |
| 3 | November 11, 2021 | Bill for $5,000 in psychotherapy services rendered to patient D.K. from January 2021 through September 2021, including visit on February 1, 2021. |
| 4 | November 15, 2021 | Bill for $5,500 in psychotherapy services rendered to patient L.H. from January 2021 through October 2021, including visit on October 25, 2021. |
| 5 | December 8, 2021 | Bill for $3,700 in psychotherapy services rendered to patient J.G. from January 2021 through December 2021, including visit on September 3, 2021. |
| 6 | December 9, 2021 | Bill for $2,500 in psychotherapy services rendered to patient D.Ha. from October 2021 to December 2021, including visit on December 6, 2021. |
| 7 | October 15, 2022 | Bill for $5,000 in psychotherapy services rendered to patient D.Hi. from January 2021 to October 2021 and $5,000 in psychotherapy services rendered to patient J.C. from January 2021 to October 2021, including visits on August 2, 2022, with D.Hi. and September 29, 2022, with J.C. |
| 8 | October 16, 2022 | Bill for $5,000 in psychotherapy services rendered to patient R.B. from January 2022 to October 2022, including visit on July 26, 2022. |

| 9 | October 17, 2022 | Bill for $5,000 in psychotherapy services rendered to patient B.W. from January 2022 to October 2022, including visit on October 10, 2022. |
|---|---|---|
| 10 | October 23, 2022 | Bill for $5,500 in psychotherapy services rendered to patient R.R. from January 2022 to October 2022, including visit on August 2, 2022. |
| 11 | November 9, 2022 | Bill for $6,450 in psychotherapy services rendered to patient R.W. from January 2022 to November 2022, including visit on November 4, 2022. |
| 12 | November 12, 2022 | Bill for $6,950 in psychotherapy services rendered to patient N.F. from January 2022 to November 2022, including visit on November 9, 2022. |
| 13 | November 12, 2022 | Bill for $6,950 in psychotherapy services rendered to patient T.T. from January 2022 to November 2022, including visit on November 9, 2022. |
| 14 | November 12, 2022 | Bill for $6,950 in psychotherapy services rendered to patient C.B. from January 2022 to November 2022, including visit on November 10, 2022. |
| 15 | November 13, 2022 | Bill for $6,950 in psychotherapy services rendered to patient L.H. from January 2022 to November 2022, including visit on January 6, 2022. |
| 16 | November 13, 2022 | Bill for $4,450 in psychotherapy services rendered to patient P.M. from May 2022 through November 2022, including visit on November 11, 2022. |
| 17 | July 10, 2023 | Bill for $1,450 in psychotherapy services rendered to patient L.B. in July 2023, including visit on July 10, 2023. |
| 18 | August 5, 2023 | Bill for $1,450 in psychotherapy services rendered to patient R.H. in January 2023, including visit on January 5, 2023. |
| 19 | August 9, 2023 | Bill for $1,450 in psychotherapy services rendered to patient T.H. in January 2023, including visit on January 11, 2023. |
| 20 | August 10, 2023 | Bill for $1,450 in psychotherapy services rendered to patient G.F. in January 2023, including visit on January 23, 2023. |
| 21 | August 12, 2023 | Bill for $1,450 in psychotherapy services rendered to patient N.J. in February 2023, including visit on February 14, 2023. |
| 22 | December 17, 2023 | Bill for $1,500 in psychotherapy services rendered to patient D.B. from January 2023 through June 2023, including visit on January 10, 2023. |
| 23 | December 17, 2023 | Bill for $1,500 in psychotherapy services rendered to patient N.M. from January 2023 through June 2023, including visit on January 31, 2023. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TWENTY-FOUR THROUGH THIRTY

### False Statements Relating to Health Care Matters

38. Paragraphs 1 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

39. On or about the dates listed below, in the Eastern District of Arkansas, Defendant KRAMEELAH BANKS, in a matter involving a health care benefit program, specifically Medicare and BCBS, knowingly and willfully made and used a materially false writing and document containing any materially false, fictitious, and fraudulent statement and entry, in connection with the payment for health care services, as described below:

| Ct. | Appx. Date | Description |
|---|---|---|
| 24 | February 9, 2022 | PROGRESS NOTE for patient D.Ha. for date of service December 6, 2021, indicating BANKS had seen D.Ha. on that date. |
| 25 | January 4, 2023 | Diagnostic Evaluation for patient L.H. for date of service January 6, 2022, indicating BANKS had seen L.H. on that date. |
| 26 | January 4, 2023 | PROGRESS NOTE for patient D.Hi. for date of service October 2, 2022, indicating BANKS had seen D.Hi. on that date. |
| 27 | January 4, 2023 | PROGRESS NOTE for patient B.W. for date of service October 10, 2022, indicating BANKS had seen B.W. on that date. |
| 28 | January 29, 2023 | PROGRESS NOTE for patient J.C. for date of service September 29, 2022, indicating BANKS had seen J.C. on that date. |
| 29 | January 31, 2023 | PROGRESS NOTE for patient R.B. for date of service July 26, 2022, indicating BANKS had seen R.B. on that date. |
| 30 | February 7, 2023 | PROGRESS NOTE for patient R.R. for date of service August 2, 2022, indicating BANKS had seen R.R. on that date. |

All in violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT THIRTY-ONE

### Aggravated Identity Theft

40. Paragraphs 1 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

41. On or January 4, 2023, in the Eastern District of Arkansas, Defendant KRAMEELAH BANKS, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and date of birth of patient L.H. on a fictitious Diagnostic Evaluation for L.H. for date of service January 6, 2022, during and in relation to wire fraud as set out in Count Fifteen, knowing that the means of identification belonged to another person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT THIRTY-TWO

### False Statement

42. On or about January 31, 2024, in the Eastern District of Arkansas, Defendant, KRAMEELAH BANKS, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the United States to a Special Agent of the FBI, to wit, BANKS claimed she submitted bills for whatever appointments appeared in her Office Ally calendar such that any overbilling for services not rendered resulted from one-off referrals having been mistakenly entered into her Office Ally calendar as if they were regulars who would be seen on a recurring basis. That statement and representation was false because, as BANKS then and there knew, BANKS repeatedly billed for services not rendered despite there being no corresponding appointments in her Office Ally calendar.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE ALLEGATION

43. Upon conviction of any of the offenses charged in Counts One through Twenty-Three of this Indictment, Defendant KRAMEELAH BANKS shall forfeit to the United States, under Title 18, United States Code, Section 982(a)(7), all property, real or personal, involved in the offense,

and all property that is traceable to the property involved in the offense, including, but not limited to, the following specific property:

a. a monetary judgment in the amount of at least $558,074.11, which represents all property constituting or derived from proceeds traceable to the offense;

b. up to $38,699.68 in Arvest Bank account xxxx5895 under the name "Arkansas Behavioral Center ABC LLC";

c. up to $49,647.85 in Arvest Bank account xxxx5431 under the name "Krameelah BANKS";

d. up to $35,562.07 in Arvest Bank account xxxx9625 under the name "Krameelah Banks"; *and*

e. up to $200,000.00 in The Lincoln National Life Insurance Company annuity with contract number xxxxx7084 under the name "Krameelah Banks."

[END OF TEXT. SIGNATURE PAGE ATTACHED.]

☐ NO TRUE BILL.                ☑ TRUE BILL.

REDACTED SIGNATURE

_____
FOREPERSON

JONATHAN D. ROSS
United States Attorney

*[signature]*

ALEXANDER D. MORGAN (0390930)
Assistant United States Attorney
425 West Capitol Avenue, Suite 500
Little Rock, Arkansas 72201
(501) 340-2600
alex.morgan@usdoj.gov